**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 2 7 2021

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| LIBERTY INITIATIVE FUND; U.S. TERM LIMITS; ARKANSAS TERM LIMITS; TIMOTHY DANIEL JACOB; TRENTON DONN POOL; ACCELEVATE 2020, LLC, and LAWRENCE COOK, | : : : : : | |
| | : | **Civil Action** |
| Plaintiffs, | : : | 4:21-cv-460-JM |
| | : | No. 21-cv-_____ |
| v. | : | |
| | : | **Original Complaint** |
| JOHN THURSTON, in his official capacity as the Secretary of State for the State of Arkansas, | : : | This case assigned to District Judge Moody |
| | : | and to Magistrate Judge Volpe |
| Defendant. | : | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS,

ARKANSAS TERM LIMITS, TIMOTHY DANIEL JACOB, TRENTON DONN

POOL, ACCELEVATE 2020, LLC and LAWRENCE COOK (collectively

"Plaintiffs"), by and through their undersigned attorney, William Hyman of the

King Law Group, PLLC, files this action against Defendant JOHN THURSTON in

his official capacity as the Secretary of State of Arkansas ("Defendant"), to

vindicate rights guaranteed under the *Ex Post Facto* clause of the United States

Constitution, the First and Fourteenth Amendments to the United States

Constitution and the Unconstitutional Conditions Doctrine requesting this

Honorable Court to preliminarily and permanently enjoin and declare that certain

provisions of Act 951 passed by the state legislature as Senate Bill 614 on April

22, 2021, which passed into law without action by the Governor on April 29, 2021

(the "Act"), and Arkansas Code §§ 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii), 7-9-

601(a)(2)(D), 7-9-601(a)(3)(A) & (B), and 7-9-108(a)-(d) violate rights guaranteed

to Plaintiffs under the United States Constitution.

This lawsuit is necessary to prevent legislation from impairing clearly

established rights under the federal constitution passed by a runaway and

vindictive state legislature intent on preventing the citizens of Arkansas from

exercising their right to bypass the power of unresponsive legislators. Many of the

statutory provisions challenged in this action run brazenly afoul of clearly

established precedent of the United States Supreme Court. In support of the

foregoing, Plaintiffs allege as follows:

## I.   PRELIMINARY STATEMENTS

1.      This is an action brought by all Plaintiffs against Defendant alleging

that Arkansas Code §§ 7-9-601(a)(2)(E)-(G), 7-9-601(d)(3)(i)-(ii); 7-9-601(g)(1)-

(4), as amended by the Act, violate rights guaranteed to Plaintiffs under the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution

because each statutory provision imposes restrictions on paid canvassers of

initiative and referendum petitions which are not imposed on volunteer canvassers

of initiative and referendum petitions and which are not imposed on petition

canvassers of independent candidate petitions.  The clear intent of the state

legislature and effect of the challenged provisions is to render the use of paid

petition canvassers for initiative and referendum petition so onerous that sponsors

of initiative and referendum petitions either refuse, or are forced, to use volunteer

canvassers instead of paid canvassers making it less likely that an initiative or

referendum petition will secure the required number of petition signatures to secure

access to the general election ballot.

    2.    This is also an action brought by Plaintiffs TIMOTHY DANIEL

JACOB and LAWRENCE COOK, residents of Pulaski county, the largest county

by population in Arkansas, against Defendant alleging that Arkansas Code § 7-9-

108(a)-(d) violate rights guaranteed to Plaintiffs TIMOTHY DANIEL JACOB and

LAWRENCE COOK under the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution because the challenged provision

requires that initiative and referendum petitions must be circulated and collect a

certain number of signatures from at least 15 different Arkansas counties in

violation of the one man, one vote principal of the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution.  The United States

Supreme Court has clearly established that states may not require distribution of

ballot access signatures based on un-apportioned geographic units, such as

counties, because such schemes give more power to registered voters in smaller

counties than those who reside in larger counties, giving the registered voters of

smaller counties a veto and more power over registered voters who reside in larger

counties as to whether an initiative or referendum secures ballot access.

      3.     This is also an action brought by all Plaintiffs against Defendant

alleging that Arkansas Code §§7-9-103(a)(6), 7-9-109(f)(1), 7-9-601(a)(2)(E)-(G),

7-9-601(b)(5), 7-9-601(c), and 7-9-601(g)(1)-(4), as amended by the Act, and

Arkansas Code §§ 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii), 7-9-601(a)(2)(D), and

7-9-601(a)(3)(A) & (B) violate rights guaranteed to Plaintiffs under the First

Amendment, as applied to the States by the Fourteenth Amendment, to the United

States Constitution as they all individually and/or in concert impose severe burdens

upon the rights of free speech, including "core political speech," which are not

narrowly tailored to advance a compelling governmental interest or important

regulatory purpose in violation of Plaintiffs' federal constitutional rights.

      4.     This is also an action brought by all Plaintiffs against Defendant

alleging that Arkansas Code § 7-9-601(d)(3)(i) & (ii), as amended by the Act,

violates the Ex Post Facto Clause of Article I, Section 10 of the United States

Constitution because the challenged statutory provision imposes punishment on criminal offenses committed before the challenged statute was passed into law on April 29, 2021.

5.     This is also an action brought by all Plaintiffs against Defendant alleging that Arkansas Code §§ 7-9-109(e) and 7-9-109(f)(1), as amended by the Act, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

6.     This is also an action brought by all Plaintiffs against Defendant alleging that Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-601(b)(5), as amended by the Act, violates the Unconditional Conditions Doctrine.

7.     Plaintiffs seek prospective equitable relief in the form of declaratory judgment as well as preliminary and permanent injunctive relief along with costs and reasonable attorneys' fees as a result of Defendant's threatened unconstitutional enforcement of the challenged statutory provisions in violation of rights guaranteed to Plaintiffs under the federal constitution.

## II.     JURISDICTION AND VENUE

8.     Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that district courts shall have original jurisdiction over all civil actions arising under the Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C.

§1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. §1983,

as Plaintiffs allege violation of rights guaranteed to them under the First and

Fourteenth Amendments to the United States Constitution as well as the Ex Post

Facto Clause of Article I, Section 10 of the United States Constitution.

9.      Venue is proper in the United States District Court for the Eastern

District of Arkansas under 28 U.S.C. §1391 as Defendant exercises his authority

within this district and maintains his principal office within this district and all of

the operative acts and/or omissions have or will occur within this district.

### III.    THE PARTIES

10.     Plaintiff LIBERTY INITIATIVE FUND is a nonprofit 501(c)(4)

organization actively engaged in supporting direct democracy action to amend

state constitutions to impose term limits on state legislators, including the proposed

term limit initiative sponsored by Plaintiff ARKANSAS TERM LIMITS, the

strictest proposed term limit in the United States. Plaintiff LIBERTY

INITIATIVE FUND is actively providing technical assistance and plans to assist in

funding the drive to collect the required number of valid signatures for the

initiative to amend the Arkansas state constitution to impose term limits on

Arkansas state legislators. Plaintiff LIBERTY INITIATIVE FUND's mission is to

promote and support the empowerment of citizens through the use of the initiative

and referendum process and intends to remain active in the state of Arkansas

indefinitely.  Plaintiff LIBERTY INITIATIVE FUND is headquartered at: 4491

Cheshire Station Plaza, Suite 176, Woodbridge, Virginia 22193.

11.    Plaintiff U.S. TERM LIMITS is a nonprofit 501(c)(4) organization

actively engaged in supporting direct democracy action to amend state

constitutions to impose term limits on state legislators, including the proposed term

limit initiative currently sponsored by Plaintiffs ARKANSAS TERM LIMITS and

TIMOTHY DANIEL JACOB.  Plaintiff U.S. TERM LIMITS has worked with

Plaintiff ARKANSAS TERM LIMITS campaign committees beginning in 1992,

and continuing to the present, including ballot measure campaigns in 1996, 2004,

2014, 2016, 2018, 2020 and now for the 2022 cycle – spending more the $2

million in total on initiative campaigns in Arkansas.  Plaintiff U.S. TERM LIMITS

is actively providing technical assistance and plans to assist in funding the drive to

collect the required number of valid signatures for the initiative to amend the

Arkansas state constitution to impose term limits on Arkansas state legislators.

Plaintiff U.S. TERM LIMITS is headquartered at: 1250 Connecticut Avenue NW,

Suite 700, Washington D.C. 20036.

12.    Plaintiff ARKANSAS TERM LIMITS is currently the organizational

sponsor of an initiative to amend the Arkansas state constitution to impose a 6 year

term limit on members of the Arkansas House of Representatives and an 8 year

term limit on member of the Arkansas State Senate with a total cumulative lifetime

term limit of 10 years for any member of the General Assembly.  For example,

someone who serves 8 years in the state Senate may only, thereafter serve 2 years

in the House of Representatives.  Furthermore, once a citizen serves a total of 10

years in the General Assembly, they are barred from further election to the General

Assembly for life.

Plaintiff ARKANSAS TERM LIMITS wants to be able to hire professional

out-of-state petition circulators/canvassers who can freely circulate and witness

initiative and referendum petitions in the state of Arkansas.  Plaintiff ARKANSAS

TERM LIMITS wants to hire Plaintiffs TRENTON DONN POOL and

ACCELEVATE 2020, LLC, to assist in the circulation of their new term limits

initiative.  Furthermore, Plaintiff ARKANSAS TERM LIMITS wants to be able to

compensate their paid canvassers based on the number of valid signatures

collected.   Plaintiff ARKANSAS TERM LIMITS lacks extra funds and the legal

expertise to conduct and/or interpret a criminal history or record report for paid

canvassers.  Plaintiff ARKANSAS TERM LIMIT believes in the First Amendment

right of anonymous speech and does not want to place their paid canvassers at risk

of retribution from individuals who oppose the circulation of their term limit

initiative and who will be made known to the public and put at physical risk and/or harassment as a direct result of the requirement to report the names and address of paid canvassers during the circulation of Plaintiffs' initiative to Defendant Secretary of State. Plaintiff ARKANSAS TERM LIMITS' address is P.O. Box 242774, Little Rock, Arkansas, 72223.

13.    Plaintiff TIMOTHY DANIEL JACOB is the chairman of Plaintiff ARKANSAS TERM LIMITS and the individual sponsor of the current initiative to amend the Arkansas state constitution to impose term limits of 6 years in the House of Representative, 8 years in the state Senate and a lifetime maximum of 10 years for any term of office in the General Assembly. Plaintiff TIMOTHY DANIEL JACOB lives in Pulaski county, the largest county by population in the state of Arkansas, residing at 4 Woodstock Court, Little Rock, Arkansas, 72227.

14.    Plaintiff LAWRENCE COOK is the treasurer of Plaintiff ARKANSAS TERM LIMITS. Plaintiff LAWRENCE COOK lives in Pulaski county, the largest county by population in the state of Arkansas. Plaintiff LAWRENCE COOK resides at 10705 Paul Eells Drive, #6, North Little Rock, Arkansas.

15.    Plaintiff TRENTON DONN POOL is an experienced professional petition circulator who is a resident of the state of Texas. Plaintiff TRENTON

DONN POOL would like to help circulate and witness the current initiative

petition sponsored by Plaintiff ARKANSAS TERM LIMITS but is prohibited from

freely doing so as a direct result of Arkansas Code § 7-9-103(a)(6).  Plaintiff

TRENTON DONN POOL is willing, as a condition precedent to being able to

freely circulate initiative petitions in the State of Arkansas to submit to the

jurisdiction of the state of Arkansas for the purpose of any investigation,

prosecution and service of process related to any initiative petition he circulates in

the state of Arkansas.   Furthermore, Plaintiff TRENTON DONN POOL refuses to

accept compensation for the collection of petition signatures based solely on the

number of hours worked as required by Arkansas Code § 7-9-601(g)(1)-(4), as

such limits on his compensation fails to fully and fairly compensate him for the

skill, care and professionalism required to collect a large number of valid petition

signatures in a short period of time.

Plaintiff TRENTON DONN POOL has circulated ballot access petitions in

Pennsylvania, New Jersey, Texas, Indiana, Ohio, Illinois, and Alabama.  Plaintiff

TRENTON DONN POOL has never been accused of petition fraud.  Plaintiff

TRENTON DONN POOL resides at 3800 Creek Road, Dripping Springs, Texas.

16.    Plaintiff ACCELEVATE 2020, LLC, is a professional petition

circulating firm formed under the laws of the state of Texas that contracts with

professional petition circulators to bid on contracts to collect ballot access

signatures on petitions to secure ballot access for candidates and initiative and

referendums in jurisdictions across the United States.  Plaintiff TRENTON DONN

POOL is the sole member and president of ACCELEVATE 2020, LLC.

ACCELEVATE 2020, LLC, intends to submit a bid to circulate initiative petitions

sponsored by Plaintiffs ARKANSAS TERM LIMITS and TIMOTHY DANIEL

JACOB but can only do so if the residency requirement and ban on payment for

signatures collected are repealed or enjoined.  Plaintiff ACCELEVATE 2020,

LLC's address is 3800 Creek Road, Dripping Springs, Texas.

     17.     Defendant JOHN THURSTON is the current Secretary of State for the

state of Arkansas and is made a Defendant solely in his official capacity.

Defendant JOHN THURSTON is vested with authority to enforce all the statutory

provisions challenged in this action.  At all relevant times, Defendant JOHN

THURSTON is a state actor within the meaning of 42 U.S.C. §1983.  Defendant's

principal office is located at: State Capitol, 500 Woodlane Avenue, Suite 256,

Little Rock, Arkansas 72201.

## IV.   FACTUAL ALLEGATIONS

     18.     Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS,

ARKANSAS TERM LIMITS and TIMOTH DANIEL JACOB are sponsoring a

new term limit initiative to amend the Arkansas State Constitution imposing stricter term limits for members of the Arkansas General Assembly limiting their service in the General Assembly to a total of 10 years for their lifetime inclusive of a limit of 6 years in the House of Representatives and 8 years in the Senate.

19.    Plaintiffs filed their new term limit initiative in Arkansas on Wednesday, May 19, 2021 and intend to collect signatures as required by the Arkansas State Constitution and Arkansas statutes to place their new term limit initiative on the 2022 general election ballot for consideration by the full Arkansas electorate.

20.    Plaintiffs must file their initiative petition containing 89,151 valid signatures to qualify for the 2022 Arkansas general election 4 months before the date set for the 2022 general election.

21.    The Act amended certain provisions of Chapter Seven of the Arkansas Code imposing new restrictions on the circulation of initiative and referendum petition in the state of Arkansas.

22.    The Act amends Arkansas Code § 7-9-103(a) to add subdivision (6) which provides that: "A person shall not act as a canvasser unless he or she is a resident of this state."

23.     Plaintiff TRENTON DONN POOL is willing to submit to the
jurisdiction of the state of Arkansas for the purpose of any investigation,
prosecution and service of process as a result of any initiative and referendum
petition circulated and filed by him in Arkansas.

24.     Plaintiffs TRENTON DONN POOL and ACCELEVATE 2020, LLC,
intend to work to collect signatures for Plaintiff AKRANSAS TERM LIMITS but
is not permitted to do so as a resident of Texas as a direct result of Arkansas Code
§ 7-0-103(a)(6).

25.     Plaintiff TRENTON DONN POOL has never been accused of petition
fraud in his nearly 10-year career circulating ballot access petitions as his main
professional pursuit.

26.     Plaintiffs LIBERTY INITIATIVE FUND and ARKANSAS TERM
LIMITS want to hire Plaintiff TRENTON DONN POOL, and other professional
petition circulators who are not residents of the state of Arkansas to collect
signatures for the term limit initiative currently sponsored by Plaintiffs
ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB for the 2022
general election ballot.

27.     Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS,
ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB  are only willing

to contract with professional petition circulators who are not residents of the state

of Arkansas if they are willing to submit to the jurisdiction of the state of Arkansas

for the purpose of any investigation, prosecution and service of process related to

any petition they circulate and file with Defendant in the state of Arkansas as a

condition precedent to being able to freely circulate and witness initiative and

referendum petitions in the state of Arkansas.

28.    Virtually every federal district and circuit court has extended the

rational of the United States Supreme Court decisions in *Meyer v. Grant*, 486 U.S.

414 (1988) and *Buckley v. American Const. Law Found., Inc.*, 525 U.S. 182 (1999)

to strike down state residency requirements for the circulation of ballot access

petitions (initiative, referendum and candidate petitions) as a severe impairment to

core political speech protected under the First and Fourteenth Amendments to the

Constitution holding that blanket residency restrictions are not narrowly tailored to

advance a state's legitimate interest to police petition fraud where the state can,

instead, require out-of-state petition circulators to submit to the jurisdiction of the

state for purposes of any investigation, prosecution and service of process related

to petitions filed by the circulator.

29.    Arkansas Code § 7-9-103(a)(6) is not narrowly tailored to advance a

compelling governmental interest or important regulatory purpose as applied to

out-of-state petition circulators willing to submit to the jurisdiction of the state of
Arkansas for the purpose of any investigation, prosecution and service of process
as a result of any initiative and referendum petitions circulated and filed by the
circulator in Arkansas.

30.     Arkansas Code § 7-9-103(a)(6), as amended by the Act, violate rights
guaranteed to Plaintiffs under the First and Fourteenth Amendments because it
reduces the pool of available circulators able to communicate Plaintiffs' message
to the voters of Arkansas, and the total quantum of core political speech available
to advance Plaintiffs LIBERTY INITIATIVE FUND, US TERM LIMITS,
TIMOTHY DANIEL JACOB and ARKANSAS TERM LIMITS' message
advocating political change and prevents Plaintiffs TRENTON DONN POOL and
ACCELEVATE 2020, LLC's non-Arkansas petition circulators from being able to
lawfully circulate and witness initiative and referendum petitions in the state of
Arkansas.

31.     Arkansas Code § 7-9-103(a)(6), as amended by the Act, violates rights
guaranteed to Plaintiffs under the First and Fourteenth Amendment because it
makes it less likely that Plaintiffs' term limit initiative petition will secure ballot
access because it prevents Plaintiffs LIBERTY INITIATIVE FUND, US TERM
LIMITS, TIMOTHY DANIEL JACOB, and ARKANSAS TERM LIMITS from

using the best and most talented professional petition circulators, most of whom reside in states other than the state of Arkansas, from being able to freely circulate and witness initiative and referendum petition in the state of Arkansas.

32.    The Act amends Arkansas Code § 7-9-109 concerning the form of verification for petitions and the penalty for false statements to add the following subdivisions: (e) a canvasser who witnesses signatures on a petition part but knowingly allows another canvasser who did not witness all signatures on a petition part to execute a false verification affidavit with respect to that petition part commits a Class D felony; and (f) which provides that: "A sponsor, sponsor's agent, or representative commits a Class D felony if a sponsor, sponsor's agent, or representative: (1) knowingly pays a canvasser for petition signatures on a petition part not personally witnessed by that paid canvasser; or (2) knowingly submits to the Secretary of State a petition part where the verifying canvasser has not witnessed each signature on that petition part.

33.    The Arkansas Code fails to define what is required to properly "witness" a signature.  Does a canvasser need to physically hold a clipboard, commonly used to permit a signer to more easily execute his or her signature and other verifying information on the petition, in order to properly "witness" a signature?  Can a less experienced canvasser who observes the collection process

of all signatures by a more experienced and skilled canvasser properly "witness" all signatures (a practice which is common, especially when an out-of-state professional petition circulator is unconstitutionally forbidden to execute a witness affidavit because he/she is a resident of another state, as is now the case in Arkansas)?  Can a canvasser look away, and for how long, so long as he or she is satisfied that the same person executed the signature for the entire time the signer has control of the petition and still lawfully "witness" the signature?

34.     Accordingly, the criminal penalties imposed under Arkansas Code §§ 7-9-109(e) and 7-9-109(f)(1) & (2) relating to a failure to properly "witness" a petition signature, which is not defined under Arkansas law, impairs rights guaranteed to Plaintiffs under the Due Process Clause of the Fourteenth Amendment to the United States Constitution for vagueness.

35.     Plaintiffs have no idea as to what constitutes a valid "witness" of an initiative and/or referendum petition signature and what may be construed in the future as an invalid "witness" of a signature for purposes of executing the required witness verification affidavit, subjecting Plaintiffs to liability of a Class D felony conviction.

36.     Additionally, Arkansas Code §7-9-109(f)(1) is unconstitutionally vague as to whether any compensation paid to canvasser who fails to properly

"witness" one or more signatures constitutes a Class D felony even where the

sponsor, sponsor's agent or representative crosses-out or strikes an initiative and/or

referendum petition signature which Plaintiffs' fear might be subject to a failed

"witness."  Accordingly, Arkansas Code §7-9-109(f)(1) violates rights guaranteed

to Plaintiffs under the Due Process Clause of the Fourteenth Amendment to the

United States Constitution for vagueness and an unconstitutional chill on the

exercise of rights guaranteed to Plaintiffs under the First and Fourteenth

Amendments to the United States Constitution to compensate petition circulators.

37.    The Act amends Arkansas Code § 7-9-601(a)(2), concerning the

hiring and training of paid canvassers, to add the following additional subsections

establishing: (E)  Instruct the paid canvasser to provide the sponsor sufficient

information of the paid canvasser's identity to allow the sponsor to obtain the

*criminal history* and *criminal record* of the paid canvasser within thirty (30) days

before the date that the paid canvasser begins collecting signatures; (F) Obtain the

criminal history and criminal record of the paid canvasser; and (G) Contact the

appropriate authority in the state or jurisdiction if a paid canvasser's *criminal*

*history* and *criminal record indicate* an open or pending criminal charge that

constitutes a *disqualifying offense* to determine the ultimate disposition or current

status of the charge.  The Act also amended Arkansas Code 7-9-601(b) by adding,

among other provisions, subsection (5) which provides that: "(5) The sponsor shall bear the ultimate burden of proving that a paid canvasser registered by the sponsor does not have a disqualifying offense in an administrative proceeding or judicial proceeding."

38.     Arkansas Code § 7-9-601(a)(2)(E)-(G), as amended by the Act, singles out paid canvassers only.  Initiative and referendum sponsors are not subject to the requirements of Arkansas Code § 7-9-601(a)(2)(E)-(G) with respect to volunteer canvassers who are just as likely to have a criminal history and criminal record as any paid canvasser.

39.     Accordingly, Arkansas Code § 7-9-601(a)(2)(E)-(G), as amended by the Act, violate rights guaranteed to all Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as unlawfully targeting paid canvassers for treatment different from volunteer canvassers and giving volunteer canvassers preferential and unequal treatment under the laws of Arkansas.

40.     Additionally, because Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-601(b)(5), as amended by the Act, targets paid canvassers for different treatment than volunteer canvassers, the challenged provisions violate rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States

Constitution which secures the right to use paid canvassers to engage in core political speech.

41.   In order for a canvasser to avoid the requirement of providing information to be subjected to a criminal record check, a canvasser must forego the right to receive payment to collect initiative and referendum signatures in Arkansas.  Accordingly, Arkansas Code § 7-9-601(a)(2)(E)-(G), as amended by the Act, is a violation of the Unconstitutional Conditions Doctrine.

42.   In order for an initiative and referendum  sponsor to be relieved of "the ultimate burden of proving that a paid canvasser registered by the sponsor does not have a disqualifying offense in an administrative proceeding or judicial proceeding" an initiative and referendum sponsor must forego their right to use paid canvassers to collect core political speech protected under the First and Fourteenth Amendments to the United States Constitution in violation of the Unconstitutional Conditions Doctrine.

43.   The Act amends Arkansas Code § 7-9-601(d)(3)(i) & (ii), concerning the hiring and training of paid canvassers, providing: "(i) A signed statement taken under oath or solemn affirmation stating that the person has not plead guilty or nolo contendere to or been found guilty of a disqualifying offense in any state of the United States, the District of Columbia, Puerto Rico, Guam or any other United

States protectorate. (ii) As used in this section, "disqualifying offense" means: (a) A felony; (b) A violation of the election laws; (c) Fraud; (d) Forgery; (e) Counterfeiting; (f) Identity theft; (g) A crime of violence, including assault, battery or intimidation; (h) Harassment; (i) Terroristic threatening; (j) A sex offense, including sexual harassment; (k) A violation of the drug and narcotics laws; (l) Breaking and entering; (m) Trespass; (n) Destruction or damage of property; (o) Vandalism; (p) Arson; (q) A crime of theft, including robbery , burglary, and simple theft or larceny."

44.    The Act's amendments to Arkansas Code § 7-9-601(d)(3)(i) & (ii) do not apply to volunteer canvassers.  Accordingly, a volunteer canvasser who commits every "disqualifying offense" listed in the challenged statute is permitted to circulate an initiative and referendum petition in the Arkansas while a paid canvasser cannot.

45.    A volunteer canvasser is just as likely as a paid canvasser to have committed a "disqualifying offense"

46.    Accordingly, the Act's amendments to Arkansas Code § 7-9-601(d)(3)(i) & (ii) impose the unequal application of the laws of Arkansas in violation of all Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

47.     The "disqualifying offenses" adopted on April 29, 2021 by the
Arkansas legislature amending Arkansas Code § 7-9-601(d)(3)(i) & (ii) impose
limitations on the right of paid petition canvassers to exercise Liberty interests
based on the commission of offenses committed before the Act was passed into
law.

48.     Arkansas Code § 7-9-601(d)(3)(i) & (ii) fails to exempt "disqualifying
offenses" committed prior to the passage of the Act into law on April 29, 2021.

49.     Accordingly, Arkansas Code § 7-9-601(d)(3)(i) & (ii), as amended by
the Act, violates the Ex Post Facto Clause of Article I, Section 10 of the United
States Constitution in violation of rights guaranteed to Plaintiffs thereunder.

50.     Arkansas Code §§ 7-9-601(g)(1)-(4), concerning the hiring and
training of paid canvassers, is amended by the Act to provide: "(g)(1) It is unlawful
for a person to pay or offer to pay a person, or receive payment or agree to receive
payment, on a basis related to the number of signatures obtained on a statewide
initiative petition or statewide referendum petition. (2) This subsection does not
prohibit compensation for circulating petitions but only compensation for obtaining
signatures when the compensation or compensation level is impacted by or related
to the number of signatures obtained.  (3) A signature obtained in violation of this

subsection is void and shall not be counted. (4) A violation under this subsection is a Class A misdemeanor."

51.     The circulation of an initiative and referendum petition is for the sole and express purpose of collecting signatures. Otherwise, a canvasser is a mere fool walking around the state of Arkansas showing voters a piece of paper without permitting them to sign. The statute's effort to bifurcate permitting compensation for the circulation of a petition and not for the collection of petition signatures defies all logic and reason.

52.     The Arkansas legislature knows full well that the United States Supreme Court has clearly established the right to use paid petition circulators to circulate initiative and referendum petitions because the failure to permit compensation for the collection of petition signatures reduces the pool of available circulators, thereby limiting the total quantum of core political speech, and making it less likely that an initiative and referendum will succeed to secure ballot access.

53.     Federal and state courts have held compensation bans based on the number of signatures collected unconstitutional where the litigants have established that such a ban reduced the pool of available circulators.

54.     Banning compensation based on the number of valid signatures collected reduces the pool of available circulators because the most skilled

professional petition circulators refuse to work on a petition drive unless they are compensated based on the number of valid signatures they collect because they are able to make more money on a petition drive that provides compensation based on signatures collected rather than based on the number of hours worked.

55. The best professional petition circulators are able to quickly identify potential valid signers of the petition, engage them in concise communication to accurately convey the purpose of the proposed initiative or referendum and make sure the signer properly executes the petition quicker than less skilled volunteer petition circulators. These highly skilled petition circulators are highly sough after and demand compensation based on the number of valid signatures collected and will, in general, refuse to work on a petition drive that calculates compensation based on the number of hours worked.

56. Plaintiffs TRENTON DONN POOL and ACCELEVATE 2020, LLC refuse to work on petition drives which prohibit compensation based on the number of valid signatures collected.

57. Based on verbal conversations with other large petition firms, Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS and ARKANSAS TERM LIMITS have been advised that any contract they sign which requires

compensation based on anything other than the number of signatures collected will increase the cost of the petition drive by at least 50%.

58.    Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS, and ARKANSAS TERM LIMITS cannot afford to launch a petition drive which will cost 50% more than a traditional petition drive that compensates their paid canvassers based on the number of valid signatures.

59.    Any compensation scheme which prohibits compensation based on the number of valid signatures collected imposes additional costs on the sponsors because there is no motivation for the canvassers to collect signatures as quickly as possible.  In fact, canvassers have an economic incentive to drag out the petition drive for as long as possible to collect as much hourly pay as possible – causing them to collect as few signatures as possible each hour they "work."  The longer a petition drive lasts, the more it costs and the less likely that the petition drive will be able to collect the required number of signatures to secure ballot access.

60.    Accordingly, Arkansas Code § 7-9-601(g)(1)-(4) imposes a severe burden on core political speech which is not narrowly tailored to advance a compelling governmental interest and is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

61.     Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) require that a person may not provide money or anything of value to another person for obtaining signatures on a statewide initiative petition or statewide referendum petition unless the sponsor or some other person: "(C)(i) Provide[s] a complete list of all paid canvassers' names and current residential addresses to the Secretary of State. (ii) If additional paid canvassers agree to solicit signatures on behalf of a sponsor after the complete list is provided, the sponsor shall provide an updated list of all paid canvassers' names and current residential addresses to the Secretary of State; and (D) Submit to the Secretary of State a copy of the signed statement provided by the paid canvasser under subdivision (d)(3) of this section" and "(3) Upon filing the petition with the Secretary of State, the sponsor shall submit to the Secretary of State a: (A) Final list of the names and current residential addresses of each paid canvasser; and (B) Signature card for each paid canvasser."

62.     The names of paid canvassers provided by sponsors under Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) are available to the public upon request while the initiative and referendum petitions are still being circulated to the public placing paid canvassers

at risk of retribution from those who oppose the petition and exposing them to personal harassment in violation of their right to engage in anonymous speech.

63.     The United States Supreme Court has ***CLEREALY*** established under rights guaranteed under the First and Fourteenth Amendments to the United States Constitution, a state may not require sponsors of initiative and referendum petitions to provide a list of names and addresses of paid canvassers as a condition to permitting paid canvassers from collecting valid initiative and referendum petitions.

64.     Accordingly, Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) violate rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

65.     Furthermore, Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) apply only to paid canvassers and do not subject volunteer canvassers to the reporting requirement imposed thereunder.

66.     Accordingly, Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) imposes unequal application of

the laws of Arkansas in violation of rights guaranteed to Plaintiffs under the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution.

67.     Arkansas Code § 7-9-108 (a)-(d) requires that each initiative and

referendum petition must collect signatures in at least 15 different counties.  *See*

*also*, Arkansas 2020 Initiative and Referenda Handbook at p. 2 ("Signature

Requirements Initiatives: Constitutional Amendment – 89,151 [Included in that

number, there must be sufficient signatures from 15 different counties; see attached

spreadsheet, pages 60-61]; Statewide Referendum – 53,491 [Included in that

number, there must be sufficient signatures from 15 different counties; see attached

spreadsheet, pages 60-61]").

68.     The requirement to collect a sufficient number of signatures from at

least 15 different counties gives voters in smaller counties more power in the

initiative and referendum process than voters in larger counties, because sponsors

of initiative and referendums must receive the consent of voters from smaller

counties giving those voters in un-apportioned smaller counties more power than

voters in the largest counties in Arkansas in violation of the principal of one man,

one vote.

69.     Forcing Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM

LIMITS and ARKANSAS TERM LIMITS to collect signatures in at least 15

different counties requires them to pay for the travel costs of paid canvassers outside of the 5 largest counties in Arkansas, thereby both increasing the cost of the petition drive and the time it takes to collect the required number of signatures to secure ballot access for their new term limits initiative.

70.     It is black letter law that signature distribution requirements based on un-apportioned counties is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

71.     Accordingly, Arkansas Code § 7-9-601(g)(1)-(4) violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

72.     Plaintiffs seek declaratory and injunctive relief to vindicate rights guaranteed to them under the United States Constitution.

73.     Plaintiffs have no other adequate remedy at law.

## V.     CAUSES OF ACTION

COUNT I
(Arkansas Code § 7-9-103(a)(6) – As-Applied First & Fourteenth Amendment Violation)

74.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully incorporated herein.

75.     Arkansas Code § 7-9-103(a)(6), as amended by the Act, prohibits out-of-state petition circulators from free circulating initiative and referendum petition in the state of Arkansas.

76.     Plaintiffs TRENTON DONN POOL and ACCELEVATE 2020, LLC, intend to circulate the new term limit initiative sponsored and/or supported by Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB but is prevented from doing so as a direct result of Arkansas § 7-9-103(a)(6), as amended by the Act.

77.     Plaintiff TRENTON DONN POOL is willing to submit to the jurisdiction of the state of Arkansas for the purpose of any investigation, prosecution and service of process related to any petition he circulates and files with Defendant in the state of Arkansas as a condition precedent to being able to freely circulate and witness initiative and referendum petition in the state of Arkansas.

78.     Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB  are only willing to contract with professional petition circulators who are not residents of the state of Arkansas if they are willing to submit to the jurisdiction of the state of Arkansas for the purpose of any investigation, prosecution and service of process related to

any petition they circulate and file with Defendant in the state of Arkansas as a condition precedent to being able to freely circulate and witness initiative and referendum petitions in the state of Arkansas.

79.     Arkansas Code § 7-9-103(a)(6) reduces the pool of available circulators for Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB imposing a severe burden on their exercise of core political speech in violation of the First and Fourteenth Amendments to the United States Constitution.

80.     Arkansas Code § 7-9-103(a)(6) is not narrowly tailored to advance the state's interest in policing potential petition fraud.

81.     Accordingly, Arkansas Code § 7-9-103(a)(6) violates rights guaranteed as-applied to all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which all Plaintiffs demand the requested relief.

## COUNT II
### (Arkansas Code §§ 7-9-109 (e), 7-9-109(f)(1) & (2) – Due Process Clause of the Fourteenth Amendment Violation)

82.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully incorporated herein.

83.   Arkansas Code § 7-9-109(e) and § 7-9-109(f)(1) & (2), as amended by the Act, imposes criminal penalty upon the failure to properly witness petition signatures.

84.   The Arkansas Code fails to define what constitutes a proper witness to the collection of signatures.

85.   Accordingly, the term "witness" is unconstitutional vague as it fails to provide any standard for canvassers and sponsors of initiative and referendum petitions to be able to determine if a petition signature was properly witnessed giving rise to potential criminal liability.

86.   Accordingly, the vague witness requirement violates all Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT III

(Arkansas Code § 7-9-109(f)(1) – First Amendment Chill on Free Speech Violation)

87.   Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully incorporated herein.

88.   Arkansas Code § 7-9-109(e) and § 7-9-109(f)(1) & (2), as amended by the Act, imposes criminal penalty upon the failure to properly witness petition signatures.

89.     The Arkansas Code fails to define what constitutes a proper witness to the collection of signatures.

90.     The term "witness" is unconstitutional vague as it fails to provide any standard for canvassers and sponsors of initiative and referendum petitions to be able to determine if a petition signature was properly witnessed giving rise to potential criminal liability.

91.     Specifically, Arkansas Code §7-9-109(f)(1) is unconstitutionally vague as to whether any compensation paid to a canvasser who fails to properly "witness" one or more signatures constitutes a Class D felony even where the sponsor, sponsor's agent or representative crosses-out or strikes an initiative and/or referendum petition signature which Plaintiffs' fear might be subject to a failed "witness."

92.     Accordingly, Arkansas Code §7-9-109(f)(1) creates an unconstitutional chill on the exercise of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to compensate petition circulators for which Plaintiffs demand the requested relief.

COUNT IV
(Arkansas Code § 7-9-601(a)(2)(E)-(G) – Equal Protection Violation)

93.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully incorporated herein.

94.     Arkansas Code § 7-9-601(a)(2)(E)-(G), as amended by the Act,

requires paid canvassers to provide the sponsor of an initiative and/or referendum

sufficient information to permit the sponsor to obtain a criminal history and record

on the paid canvasser within thirty (30) days before the date that the paid canvasser

begins to collect signatures and requires the sponsor of an initiative and/or

referendum to obtain a criminal history and criminal record report of paid

canvassers and to contact "the appropriate authority in the state or jurisdiction if a

paid canvasser's criminal history and criminal record indicate an open or pending

criminal charge that constitutes a "disqualifying offense" to determine the ultimate

disposition or current status of the charge."

95.     Arkansas Code § 7-9-601(a)(2) exempts volunteer canvassers and is

only applied to paid canvassers.

96.     Arkansas Code § 7-9-601(a)(2) targets paid canvassers for special

treatment under the laws of Arkansas because it fails to impose the same

requirements on the use of volunteer canvassers to circulate initiative and

referendum petition in the state of Arkansas.

97.     Accordingly, Arkansas Code § 7-9-601(a)(2) violates rights

guaranteed to all Plaintiffs under the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

## COUNT V
(Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-601(b)(1), (4) & (5) - First and Fourteenth Amendment Violation)

98.    Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully incorporated herein.

99.    Arkansas Code § 7-9-601(a)(2)(E)-(G), as amended by the Act, requires paid canvassers to provide the sponsor of an initiative and/or referendum sufficient information to permit the sponsor to obtain a criminal history and record on the paid canvasser within thirty (30) days before the date that the paid canvasser begins to collect signatures and requires the sponsor of an initiative and/or referendum to obtain a criminal history and criminal record report for paid canvassers and to contact "the appropriate authority in the state or jurisdiction if a paid canvasser's criminal history and criminal record indicate an open or pending criminal charge that constitutes a "disqualifying offense" to determine the ultimate disposition or current status of the charge."

100.   Arkansas Code § 7-9-601(a)(2)(E)-(G) exempts volunteer canvassers and is only applied to paid canvassers.

101.   The United States Supreme Court has established that the right for initiative and referendum sponsors to "employ" paid canvassers and for canvassers to receive compensation for their services under the First and Fourteenth Amendments to the United States Constitution.

102.   The United States Supreme Court has rejected less onerous regulation of paid canvassers, such as the requirement that initiative and referendum sponsors report the names and addresses of paid canvassers to the state as a condition to exercise the right to "employ" paid canvassers.

103.   Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-601(b)(1) imposes a severe burden on Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB in a number of ways both individually and in tandem: (a) Plaintiffs must collect information from paid canvassers to be able to conduct a criminal history and record check; (b) Plaintiffs must pay for a criminal history and criminal record check pursuant to Arkansas Code § 7-9-601(b)(1) for each and every paid canvasser that Plaintiffs want to "employ" on their new term limits initiative – a record check conducted by the state of Arkansas and the very entity pretending to need the information but demanding a fee to do so; (c) be able to understand the records they receive; and (d) contact individual jurisdictions if there are any open criminal adjudication and

that may constitutes a "disqualifying offense" to determine the ultimate disposition or current status of the charge" – whatever the heck that means.

104.   The exercise of rights guaranteed under the First and Fourteenth Amendments cannot depend on the ability or willingness of a sponsor of an initiative or referendum petition to conduct and pay for criminal history and criminal record checks and be able to interpret and understand what they have to do with any such report, all on pain of legal jeopardy of a Class A misdemeanor under Arkansas Code § 7-9-601(b)(4).

105.   The requirements of Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-601(b)(1), (4) & (5) fail to narrowly advance a compelling governmental interest as evidenced by the fact that the state of Arkansas failed to apply the same requirements to volunteer canvassers.

106.   Accordingly, Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-601(b)(1), (4) & (5) is a direct and severe attack on Plaintiffs' right to use paid canvassers to collect signatures for their new term limit initiative petition in the state of Arkansas in violation of the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT VI
(Arkansas Code §§ 7-9-601(a)(2)(E)-(G), 7-9-601(b)(5) – First and Fourteenth
Amendment Unconstitutional Conditions Doctrine Violation)

107.   Plaintiffs repeat and re-allege all previous paragraphs of this
Complaint as if fully incorporated herein.

108.   Arkansas Code § 7-9-601(a)(2)(E)-(G) imposes the obligation of all
Plaintiffs to conduct and/or submit to the requirements of a criminal history and
criminal record report as a condition to exercise their clearly established right to
pay and receive compensation for the circulation of referendum and initiative
petitions in Arkansas.

109.   Plaintiff TRENTON DONN POOL objects to submitting to a criminal
history and criminal record check and, in order to circulate Plaintiffs LIBERTY
INITIATIVE FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and
TIMOTHY DANIEL JACOB's new term limit initiative petition in Arkansas, he
must forgo his constitutional right to receive compensation and must, instead,
circulate initiative and referendum petitions in Arkansas only as a volunteer.

110.   Additionally, in order to be relieved of "the ultimate burden of
proving that a paid canvasser registered by the sponsor does not have a
disqualifying offense in an administrative proceeding or judicial proceeding"
imposed by Arkansas Code § 7-9-601(b)(5), Plaintiffs LIBERTY INITIATIVE

FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and TIMOTHY

DANIEL JACOB must forego their constitutional right to use paid canvassers

under the First and Fourteenth Amendments and instead must rely only on

volunteer circulators to collect the required number of valid signatures to secure

ballot access on the 2022 general election ballot.

111.    Accordingly, Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and 7-9-

601(b)(5) impose an unconstitutional condition on all Plaintiffs in violation of their

clearly established to "employ" paid canvassers and/or the right to receive

compensation for circulating initiative and referendum petitions in the state of

Arkansas free from unlawful conditions in violation of the First and Fourteenth

Amendments to the United States Constitution and in violation of the

Unconstitutional Conditions Doctrine for which Plaintiffs demand the requested

relief.

COUNT VII

(Arkansas Code § 7-9-601(d)(3)(i) & (ii) – Equal Protection Violation)

112.    Plaintiffs repeat and re-allege all previous paragraphs of this

Complaint as if fully incorporated herein.

113.    Arkansas Code § 7-9-601(d)(3)(i) & (ii), as amended by the Act,

imposes the requirement, as a condition precedent for Plaintiff TRENTON DONN

POOL to being able to circulate initiative and referendum petitions in the state of

Arkansas, to execute: "(i) A signed statement taken under oath or solemn affirmation stating that the person has not plead guilty or nolo contendere to or been found guilty of a disqualifying offense in any state of the United States, the District of Columbia, Puerto Rico, Guam or any other United States protectorate. (ii) As used in this section, "disqualifying offense" means: (a) A felony; (b) A violation of the election laws; (c) Fraud; (d) Forgery; (e) Counterfeiting; (f) Identity theft; (g) A crime of violence, including assault, battery or intimidation; (h) Harassment; (i) Terroristic threatening; (j) A sex offense, including sexual harassment; (k) A violation of the drug and narcotics laws; (l) Breaking and entering; (m) Trespass; (n) Destruction or damage of property; (o) Vandalism; (p) Arson; (q) A crime of theft, including robbery , burglary, and simple theft or larceny."

114.   Arkansas Code § 7-9-601(d)(3)(i) & (ii) only applies to paid canvassers for initiative and referendum petitions and does not apply to volunteer canvassers.

115.   A volunteer canvasser may commit every "disqualifying offense" and still be eligible to circulate initiative and referendum petitions for Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS, ARKANSAS TERM LIMITS and TIMOTHY DANIEAL JACOB in the state of Arkansas, while a

single violation of a "disqualifying offence" by a paid canvasser prohibits the paid

canvasser from circulating an initiative or referendum petition in the state of

Arkansas for Plaintiffs.

116.   Accordingly, Arkansas Code § 7-9-601(d)(3)(i) & (ii) apply the laws

unequally in the state of Arkansas in violation of rights guaranteed to Plaintiffs

under the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution for which Plaintiffs demand the requested relief.

COUNT VIII
(Arkansas Code § 7-9-601(d)(3)(i) & (ii) – As-Applied Article I, § 10 Ex Post
Facto Clause Violation)

117.   Plaintiffs repeat and re-allege all previous paragraphs of this

Complaint as if fully incorporated herein.

118.   Arkansas Code § 7-9-601(d)(3)(i) & (ii), as amended by the Act,

imposes the requirement, as a condition precedent for Plaintiff TRENTON DONN

POOL to being able to circulate initiative and referendum petitions in the state of

Arkansas, to execute: "(i) A signed statement taken under oath or solemn

affirmation stating that the person has not plead guilty or nolo contendere to or

been found guilty of a disqualifying offense in any state of the United States, the

District of Columbia, Puerto Rico, Guam or any other United States protectorate.

(ii) As used in this section, "disqualifying offense" means: (a) A felony; (b) A

violation of the election laws; (c) Fraud; (d) Forgery; (e) Counterfeiting; (f)

Identity theft; (g) A crime of violence, including assault, battery or intimidation;

(h) Harassment; (i) Terroristic threatening; (j) A sex offense, including sexual

harassment; (k) A violation of the drug and narcotics laws; (l) Breaking and

entering; (m) Trespass; (n) Destruction or damage of property; (o) Vandalism; (p)

Arson; (q) A crime of theft, including robbery , burglary, and simple theft or

larceny."

119.   Arkansas Code § 7-9-601(d)(3)(i) & (ii) was passed into law on April

29, 2021.

120.   Arkansas Code § 7-9-601(d)(3)(i) & (ii) does not limit its application

to "disqualifying offenses" committed on or after April 29, 2021.

121.   Any paid canvasser who committed a "disqualifying offence" at any

time in the past is now, suddenly, and without notice prior to committing the

"disqualifying offense" prevented from exercising rights guaranteed under the First

and Fourteenth Amendments to the United States Constitution.

122.   Plaintiffs LIBERTY INITIATIVE FUND, U.S. TERM LIMITS,

ARKANSAS TERM LIMITS and TIMOTHY DANIEL JACOB are suddenly

prevented from "employing" any paid canvasser who has committed a

"disqualifying offence" at any time in their past.

123.   The Ex Post Facto Clause of Article I, Section 10 of the United States

Constitution prohibits the States from imposing new punishment after a criminal

offense has been committed.

124.   Accordingly, Arkansas Code § 7-9-601(d)(3)(i) & (ii) is a clear

violation of the Ex Post Facto Clause of Article I, Section 10 of the United States

Constitution as applied to any "disqualifying offence" committed before April 29,

2021, for which all Plaintiffs demand the requested relief.

COUNT IX
(Arkansas Code §§ 7-9-601(g)(1)-(4) and 7-9-601(c) – First and Fourteenth
Amendment Violation)

125.   Plaintiffs repeat and re-allege all previous paragraphs of this

Complaint as if fully incorporated herein.

126.   Arkansas Code § 7-9-601(g)(1)-(4), as amended by the Act, provides:

"(g)(1) It is unlawful for a person to pay or offer to pay a person, or receive

payment or agree to receive payment, on a basis related to the number of signatures

obtained on a statewide initiative petition or statewide referendum petition. (2)

This subsection does not prohibit compensation for circulating petitions but only

compensation for obtaining signatures when the compensation or compensation

level is impacted by or related to the number of signatures obtained.  (3) A

signature obtained in violation of this subsection is void and shall not be counted.

(4) A violation under this subsection is a Class A misdemeanor."

127.   Arkansas Code § 7-9-601(c), as amended by the Act, strikes the word "or obtaining" after the word "soliciting" and redefines a "paid canvasser" as: "a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature on an initiative or referendum petition is solicited in exchange for soliciting a signature on a petition."

128.   The United States Supreme Court has clearly established the right to compensate petition canvassers to collect signatures on initiative and referendum petitions.  The very act of core political speech to which the right appertains, is the interactive communication between circulator and voter to collect the signatures. Accordingly, the right to compensation for the circulation of initiative and referendum petition is tethered to the compensation for the collection of signatures as part of interactive speech advocating political change.

129.   Furthermore, Arkansas Code §§ 7-9-601(g)(1)-(4) and 7-9-601(c) imposes a severe burden on core political speech protected under the First and Fourteenth Amendments to the United States Constitution because it reduces the pool of available circulators, increases the costs of a petition drive, increases the amount of time it will take an initiative or referendum sponsor to collect the

required number of petition signatures to secure ballot access and makes it less

likely that a sponsor of an initiative or referendum petition will succeed in securing

ballot access, thereby eliminating a wider debate on the merits of the initiative or

referendum by the entire Arkansas electorate.

130.   Arkansas Code §§ 7-9-601(g)(1)-(4) and 7-9-601(c) are not narrowly

tailored to advance a compelling governmental interest as volunteer petition

circulators are just as, or even more likely, to commit petition fraud because

professional petition canvassers, unlike volunteer canvassers, rely on their good

reputation to secure their next petition job.

131.   Accordingly, Arkansas Code §§ 7-9-601(g)(1)-(4) and 7-9-601(c)

violate rights guaranteed to all Plaintiffs under the First and Fourteenth

Amendments to the United States Constitution for which they demand the

requested relief.

COUNT X
(Arkansas Code §§ 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii), 7-9-601(a)(2)(D), and
7-9-601(a)(3)(A) & (B) – First and Fourteenth Amendment Violation)

132.   Plaintiffs repeat and re-allege all previous paragraphs of this

Complaint as if fully incorporated herein.

133.   Arkansas Code §§ 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii), 7-9-

601(a)(2)(D), and 7-9-601(a)(3)(A) & (B), require that a person may not provide

money or anything of value to another person for obtaining signatures on a statewide initiative petition or statewide referendum petition unless the sponsor or some other person: "(C)(i) Provide[s] a complete list of all paid canvassers' names and current residential addresses to the Secretary of State. (ii) If additional paid canvassers agree to solicit signatures on behalf of a sponsor after the complete list is provided, the sponsor shall provide an updated list of all paid canvassers' names and current residential addresses to the Secretary of State; and (D) Submit to the Secretary of State a copy of the signed statement provided by the paid canvasser under subdivision (d)(3) of this section" and "(3) Upon filing the petition with the Secretary of State, the sponsor shall submit to the Secretary of State a: (A) Final list of the names and current residential addresses of each paid canvasser; and (B) Signature card for each paid canvasser."

134.   The names of paid canvassers provided by sponsors under Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) are available to the public upon request while the initiative and referendum petitions are still being circulated to the public placing paid canvassers at risk of retribution from those who oppose the petition and exposing them in violation of their right to engage in anonymous speech.

135.   The United States Supreme Court has clearly established that under rights guaranteed under the First and Fourteenth Amendments to the United States Constitution, a state may not require sponsors of initiative or referendum petitions to submit lists of names and address of paid canvassers during a petition drive.

136.   Additionally, the United States Supreme Court has clearly established that the right of free speech under the First and Fourteenth Amendments to the United States Constitution extends to protect anonymous speech.

137.   Accordingly, Arkansas Code §§ 7-9-601(a)(1); 7-9-601(a)(2)(C)(i) & (ii); 7-9-601(a)(2)(D); and 7-9-601(a)(3)(A) & (B) violate rights guaranteed to all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

## COUNT XI
### (Arkansas Code § 7-9-108(a)-(d) – Equal Protection Violation)

138.   Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully incorporated herein.

139.   Arkansas Code § 7-9-108(a)-(d) imposes the requirement that an initiative or referendum petition must be circulated and collect a certain number of signatures in at least 15 different counties.

140.   The United States Supreme Court has clearly established that signature distribution requirements based on un-apportioned jurisdictions, such as

counties, violate the one man, one vote principal of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

141.   Plaintiffs TIMOTHY DANIEL JACOB and LAWRENCE COOK reside in Pulaski county, the largest county by population, in the state of Arkansas.

142.   Plaintiffs TIMOTHY DANIEL JACOB and LAWRENCE COOK must rely on voters in counties with smaller populations to join in support of a referendum or initiative petition, giving those voters who reside in counties with smaller populations great power in deciding which initiatives and referendums secure ballot access over voter who reside in the largest county in Arkansas.

143.   Pulaski county has a population in excess of 392,000 citizens and contains more than enough registered to voters to place any initiative or referendum on the Arkansas ballot without the need to rely on the support of registered voters in counties with smaller populations.

144.   Accordingly, Arkansas Code § 7-9-108(a)-(d) violates rights guaranteed to Plaintiffs TIMOTHY DANIEL JACOB and LAWRENCE COOK under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which he demands the requested relief.

## VI – REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Enter preliminary injunctive relief enjoining Defendant from enforcing Arkansas Code §§ 7-9-103(a)(6), 7-9-601(a)(2), 7-9-601(b)(5), 7-9-601(d)(3)(i) & (ii), 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii), 7-9-601(a)(2)(D), 7-9-601(a)(3)(A) & (B), and 7-9-108(a)-(d);

b.      Declare Arkansas Code § 7-9-103(a)(6) unconstitutional under the First and Fourteenth Amendments to the United States Constitution as-applied to out-of-state petition circulators (or canvassers) who submit to the jurisdiction of the state of Arkansas for the purpose of any investigation, prosecution and service of process related to any petition signatures collected and filed with Defendant;

c.      Declare Arkansas Code §§ 7-9-109(e), 7-9-109(f)(1) & (2) unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

d.      Declare Arkansas Code § 7-9-109(f)(1) unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

e.      Declare Arkansas Code § 7-9-601(a)(2) unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

f.      Declare Arkansas Code § 7-9-601(a)(2)(E)-(G) unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

Case 4:21-cv-00460-JM   Document 1   Filed 05/27/21   Page 50 of 52

g.      Declare Arkansas Code §§ 7-9-601(a)(2) and 7-9-601(b)(5)

unconstitutional as a violation of the Unconstitutional Conditions Doctrine;

h.      Declare Arkansas Code § 7-9-601(d)(3)(i) & (ii) unconstitutional

under the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution;

i.      Declare Arkansas Code § 7-9-601(d)(3)(i) & (ii) unconstitutional

under the Ex Post Facto Clause of Article I, Section 10 of the United States

Constitution;

j.      Declare Arkansas Code §§ 7-9-601(g)(1)-(4) and 7-9-601(c), as

amended by the Act, unconstitutional under the First and Fourteenth Amendments

to the United States Constitution;

k.      Declare Arkansas Code §§ 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii),

7-9-601(a)(2)(D), and 7-9-601(a)(3)(A) & (B) unconstitutional under the First and

Fourteenth Amendments to the United States Constitution;

l.      Declare Arkansas Code § 7-9-108(a)-(d) unconstitutional under the

Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution;

m.      Permanently enjoin Defendant from enforcing Arkansas Code §§ 7-9-

103(a)(6), 7-9-109(e), 7-9-109(f)(1) & (2), 7-9-601(a)(2)(E)-(G), 7-9-601(c) (as

amended by the Act), 7-9-601(b)(5), 7-9-601(g)(1)-(4), 7-9-601(a)(1), 7-9-601(a)(2)(C)(i) & (ii), 7-9-601(a)(2)(D), 7-9-601(a)(3)(A) & (B), and 7-9-108(a)-(d);

      n.     Permanently enjoin Defendant from enforcing Arkansas Code § 7-9-601(d)(3)(i) & (ii) as-applied to any "disqualifying offense" committed prior to April 29, 2021.

      o.     Order Defendant to promulgate a form, or some other process, to permit out-of-state petition circulators (or canvassers) to submit to the jurisdiction of the state of Arkansas for the purpose of any investigation, prosecution and service of process related to any petition signatures collected and filed with Defendant before Defendant may enforce Arkansas Code § 7-9-103(a)(6) in the future.

      p.     Award Plaintiffs the costs of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988;

      q.     Retain jurisdiction of this action and grant Plaintiffs such other relief which may, in the determination of this Honorable Court, be necessary and proper.

Respectfully submitted,

Dated: May 21, 2021

W. Whitfield Hyman

ArBar# 2013237
King Law Group, PLLC
300 North 6th Street
Fort Smith, Arkansas 72901
Phone:  479.782.1125
Fax:  479.316.2252
Hyman@ArkansasLawKing.com