IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LIBERTY INITIATIVE FUND, ET AL,**                                          **PLAINTIFFS**

V.                                         4:21CV00460 JM

**JOHN THURSTON, in his official capacity as**
**Secretary of State for the State of Arkansas**                             **DEFENDANT**

## ORDER

Pending is the Motion to Dismiss filed by Defendant John Thurston, in his official capacity as Secretary of State for the State of Arkansas (the "State"). Plaintiffs Liberty Initiative Fund and U.S. Term Limits are non-profit 501(c)(4) organizations supporting an amendment to the Arkansas Constitution to allow term limits for state legislators. Plaintiff Arkansas Term Limits is the organizational sponsor of an initiative to amend the Arkansas Constitution to allow term limits, Plaintiff Timothy Daniel Jacob is its Chairman and Plaintiff Lawrence Cook is its Treasurer. Plaintiff Accelevate 2020 LLC is a professional petition circulating firm formed in Texas and Plaintiff Trenton Donn Pool is its sole member and President. Pool is also a resident of Texas and a professional petition circulator interested in circulating the current initiative petition sponsored by Arkansas Term Limits.

Plaintiffs challenge Ark. Code Ann. § 7-9-601 regulating the hiring and training of paid canvassers ("Section 601"), § 7-9-103(a)(6) requiring canvassers to be Arkansas residents ("Section 103"), § 7-9-108 regulating the circulation of petitions ("Sections 108"), and § 7-9-109(e) and (f) establishing penalties for falsification ("Section 109"). With the exception of Section 601(d), Plaintiffs contend that Section 601 violates their rights under the First and Fourteenth Amendments. They allege the requirements of Section 601(a)(2)(E)-(G) and Section

601(d) violate the Equal Protection Clause and Section 601(d) also violates the Constitution's prohibition of Ex Post Facto Clause. Plaintiffs allege that the residency requirement of Section 103 violates the First and Fourteenth Amendments, Section 108 violates the Equal Protection Clause, and Section 109 violates their First Amendment rights. They contend that certain sections of these statutes not only violate the United States Constitution but also the Arkansas Constitution. Plaintiffs seek a declaration that these laws are unconstitutional and an injunction preventing the Secretary of State from enforcing them.

I.     DISCUSSION OF THE LAW

A. Rule 12(b)(1) Motion

"[S]tanding cannot be inferred ... from averments in the pleadings, but rather must affirmatively appear in the record," *Spencer v. Kemna*, 523 U.S. 1, 10–11 (1998), nor will "naked assertion[s] devoid of further factual enhancement" suffice, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotation marks omitted).

The State argues that Plaintiffs do not have standing to challenge Section 109(e)-(f)), the witness-fraud provision, or Section 108, the fifteen-county requirement, because these statutory provisions mirror state constitutional provisions, and the constitutional provisions are not challenged. Plaintiffs do not oppose the dismissal of Count II relating to witness-fraud. However, they do oppose dismissal of Count XI regarding the fifteen-county requirement of Section 108. Ark. Code Ann. § 7-9-108(a) and (d) (West) provide:

> (a) Each initiative or referendum petition ordering a vote upon a measure having general application throughout the state shall be prepared and circulated in fifteen (15) or more parts or counterparts, and each shall be an exact copy or counterpart of all other such parts upon which signatures of petitioners are to be solicited. When a sufficient number of parts are signed by a requisite number of qualified electors and are filed and duly certified by the Secretary of State, they shall be treated and considered as one (1) petition.
>                        \*\*\*
> (d) No part of any initiative or referendum petition shall contain signatures of petitioners

from more than one (1) county.

Ark. Code Ann. § 7-9-108 (West). The corresponding section of the Arkansas Constitution is Article 5, section 1. Section 1 provides:

> Upon all initiative or referendum petitions provided for in any of the sections of this article, it shall be necessary to file from at least fifteen of the counties of the State, petitions bearing the signature of not less than one-half of the designated percentage of the electors of such county.

Ark. Const. art. V, § 1.

"Plaintiffs agree that the state constitutional provision is identical to the statutory provision challenged in this action." (Resp. to Mot. to Dismiss, ECF No. 19 at p. 37). Plaintiffs respond that it is "because the state constitutional provision is sufficiently identical to the statutory provision that Plaintiffs are requesting to be both enjoined and declared unconstitutional that it is not necessary to also include the state constitutional provision as a separate challenge." *Id.* Plaintiffs contend that the Court's declaration that Section 108 is unconstitutional would automatically render the corresponding Arkansas constitutional provision unconstitutional. Therefore, an express claim regarding Article 5 Section 1 in their Complaint is not necessary. In the alternative, Plaintiffs argue that the Court could interpret Plaintiffs' prayer for relief as a request for declaratory judgment regarding the Arkansas constitutional provisions. If those options don't work, Plaintiffs would like the opportunity to amend their complaint for the third time.

Plaintiffs cite *We the People PAC v. Bellows*, 519 F. Supp. 3d 13 (D. Me. 2021) in support of their argument that the failure to specifically challenge Article 5 Section 1 is not fatal to their claim. However, the Maine Court did not consider the same argument. The court did not consider that the relief requested by the plaintiff, i.e., injunction of a statute, would extend to an

3

identical constitutional provision which was not challenged. Plaintiffs have not cited the Court to any other authority supporting this argument.

"A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). Plaintiffs concede that the fifteen-county requirement is identical to provisions in Article 5 § 1. They also acknowledge that they did not include a claim in their Complaint challenging the corresponding constitutional provision. *See Arizonans for Fair Elections v. Hobbs*, 454 F. Supp. 3d 910 (D. Ariz. Apr. 17, 2020). Therefore, even if Plaintiffs were successful in this case, the Court could only enjoin the Arkansas statutes and not the constitutional provisions in Article 5 § 1.

The Court cannot read claims into the complaint when they are not there. However, Plaintiffs may amend their Complaint for the limited purpose of adding a challenge to the constitutionality of Article 5, Section 1's fifteen-county requirement. They must do so within ten (10) days from the date of this Order. If the State files a new motion to dismiss, it must be limited to this issue. The Court will not reconsider issues which have been raised in this motion to dismiss.

The State's motion as to Count II is GRANTED. The State's motion as to Count XI is GRANTED without prejudice to Plaintiffs' right to amend the Complaint.

### B. Rule 12(b)(6) Motion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### 1. Count I - residency requirement

Section 103(a)(6) states that "[a] person shall not act as a canvasser unless he or she is a resident of this state." Ark. Code Ann. § 7-9-103 (West). In Count I of the Complaint, Plaintiffs allege that this subsection of the statute violates their First and Fourteenth Amendment rights because it prevents Plaintiff Trenton Donn Pool and Accelevate 2020 LLC from circulating the new term limit initiative sponsored by Plaintiffs Liberty Initiative Fund, US Term Limits, Arkansas Term Limits and Timothy Daniel Jacob. Plaintiffs allege that Section 103 imposes a severe burden on the Plaintiff Sponsors' core political speech and is not narrowly tailored to advance the State's interest in preventing petition fraud.

The State argues that Section 103 does not violate the First or Fourteenth Amendment based on *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001). In *Jaeger*, plaintiffs filed suit against the State of North Dakota alleging that the statutes requiring circulators of initiative petitions to be North Dakota residents and prohibiting payment of circulators on a per signature basis violated their First and Fourteenth Amendment rights. The district court ruled in favor of the State on summary judgment and plaintiffs appealed. The Eighth Circuit found that the North Dakota residency statute did not unduly restrict speech. *Id.* at 616. The Court considered the State's evidence that in one year 17,000 signatures were invalidated and the circulators involved were not North Dakota residents. The circulators fled the

state, and the matter was never fully resolved. Although the plaintiffs argued that the residency requirement burdened their First Amendment rights by making it more costly and time consuming to collect signatures, the court was persuaded by the state's evidence that approximately 70% of the petitions circulated in the past 15 years qualified to be placed on the ballot. The Court noted that there was no evidence in the record to support the plaintiffs' argument.

This case is not procedurally similar to *Jaeger*. Plaintiffs have not had the opportunity to present evidence to support their arguments and the Court must take the facts asserted in the Complaint as true. Further, the *Jaeger* decision does not preclude future claims that residency requirement statutes place too great a burden on sponsors. It only finds that the plaintiffs in *Jaeger* failed to prove that the North Dakota statute was too burdensome. The Eighth Circuit began its analysis by acknowledging that "[t]he Supreme Court has stated that 'no litmus-paper test will separate valid ballot-access provisions from invalid interactive speech restrictions' because there is 'no substitute for the hard judgments that must be made.'" *Id.* (quoting *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 192 (1999). Granting the State's motion to dismiss this claim would be akin to this Court applying a litmus-paper test.

    **2. Count III - criminal penalties (First Amendment chill on free speech)**

In Count III, Plaintiffs challenge Arkansas Code § 7-9-109(f):

> (f) A sponsor, sponsor's agent, or representative commits a Class D felony if a sponsor, sponsor's agent, or representative:
> (1) Knowingly pays a canvasser for petitioner signatures on a petition part not personally witnessed by that paid canvasser; or
> (2) Knowingly submits to the Secretary of State a petition part where the verifying canvasser has not witnessed each signature on that petition part.

Ark. Code Ann. § 7-9-109 (West). Plaintiffs allege that the potential to be charged with criminal liability for paying a canvasser for fraudulent signatures or submitting fraudulent signatures

6

obtained by a paid canvasser creates an unconstitutional chill on the exercise of Plaintiff Sponsors' First Amendment rights. (Pl.'s Comp., ECF No. 9 at ¶¶ 95-98). Plaintiffs claim that Section 109 is vague as to whether criminal liability attaches if the sponsor pays a canvasser for deficient signatures but never submits those signatures to the Secretary of State. Plaintiffs claim the uncertainty adds to Section 109's chilling effect.

The State argues that the statute is clear that sponsors are only liable for "knowingly" paying for or submitting fraudulent petition signatures obtained by paid canvassers. It argues that the submission of fraudulent signatures is not speech protected by the First or Fourteenth Amendment and the chilling of the behavior is not a violation of those rights.

Accepting Plaintiffs' allegations as true, the Court cannot say that they have failed to state a claim under the First Amendment. The State's argument that the submission of fraudulent signatures is not protected is unpersuasive. The chill of fraudulent behavior is not the issue. It is the chill of core political speech based upon the threat of prosecution that is the constitutional concern here. "[G]iven our historical skepticism of permitting the government to police the line between truth and falsity, and between valuable speech and drivel, we presumptively protect all speech, including false statements, in order that clearly protected speech may flower in the shelter of the First Amendment." *281 Care Comm. v. Arneson*, 638 F.3d 621, 636 (8th Cir. 2011) (citing *U.S. v. Alvarez*, 617 F.3d 1198, 1217 (2010)).

### 3. Counts IV and V- criminal record prohibition, background check requirement

Arkansas Code § 7-9-601(a)(2)(E)-(G) requires a paid canvasser to provide the petition sponsor with adequate information so that the sponsor can obtain the criminal history and criminal record of the canvasser. The statute requires sponsors to obtain the canvasser's criminal history and criminal record and to follow up with authorities to see if the canvasser has an open

or pending charge that is a disqualifying offense. Volunteer canvassers and their petition sponsors are not included in these requirements. Plaintiffs claim the statute targets paid canvassers and not volunteer canvassers in violation of the Equal Protection Clause.

The State contends that § 7-9-601(a)(2)(E)-(G) does not violate the Equal Protection Clause because Plaintiffs, whether volunteer or paid canvassers, are not members of a suspect or quasi-suspect class. Therefore, the statute would only be subject to a rational basis review. The State argues the statute would easily pass rational basis review because Arkansas has a legitimate state interest in protecting the integrity of the petitioning process from paid canvassers who have an incentive to forge petition signatures. The State contends that it is a well-recognized principle that "paid canvassers, who make their livelihood gathering signatures and who often . . . are paid by the signature, have an incentive to submit forged or otherwise invalid signatures." *McDaniel v. Spencer*, 457 S.W.3d 641, 650 (2015), as revised (Mar. 11, 2015) (referring to testimony before the lower court).

Although paid canvassers are not a suspect class, "[t]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 488 U.S. 414, 421-22 (1988). Core political speech includes not only the right "to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.* at 424. Plaintiffs claim that the statute restricts their right to circulate an initiative petition by making it more difficult for them to employ paid canvassers. The Court cannot say, at this point in the litigation, that Plaintiffs have failed to state a claim that § 7-9-601(a)(2)(E)-(G) violates their Equal Protections rights.

In Count V, Plaintiffs restate their claims with regard to Arkansas Code § 7-9 601(a)(2)(E)-(G) and add challenges to similar subsections 601(b)(1), (4), and (5). Plaintiffs

contend that these subsections of the statute violate their First Amendment rights because they impose a severe burden on Liberty Initiative Fund, U.S. Term Limits, and Arkansas Term Limits, as initiative sponsors, to circulate their petitions and employ paid canvassers. It imposes a severe burden on Timothy Daniel Jacob as a paid canvasser to receive compensation for his services. Sponsors are required to collect enough information to conduct a criminal history check, pay the State for the check, decipher the report, and contact individual jurisdictions for more information.

The State argues that Count V should be dismissed because it is common sense that certain criminals should be prohibited from participating in the petitioning process. The State argues that a regulation doesn't impose a severe burden just because it costs money to comply. Further, the statute does not impose a severe burden because sponsors have complied with the criminal background check requirement for the past decade.

The Court finds that Plaintiffs have stated a claim for violation of their First and Fourteenth Amendment and Equal Protection rights in Counts IV and V of the Complaint. Whether Plaintiffs have suffered, or will suffer, a severe burden by complying with the statute is an issue for the next stage of litigation.

4. **Count VI - criminal record prohibition, background check requirement (unconstitutional conditions)**

In Count VI, Plaintiffs restate the previous First and Fourteenth Amendment challenge to Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and §7-9-601(b)(5). Subsection (b)(5) provides that the sponsor bears the ultimate burden of proving in an administrative or judicial proceeding that their paid canvasser does not have a disqualifying offense. Plaintiffs contend that these subsections violate the unconstitutional conditions doctrine.

The unconstitutional conditions doctrine states that a government "may not deny a benefit

to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513 (1996). A "condition cannot be unconstitutional if it could be constitutionally imposed directly." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59-60 (2006). An unconstitutional conditions claim is often brought to challenge a condition on the receipt of government benefits such as government funding or the granting of licenses.

Plaintiffs allege that the State's requirement that they perform background checks and prove that their paid canvasser has not been convicted of a disqualifying offense is an unconstitutional condition for employing a paid canvasser. The question is whether requiring a background check, certifying that a paid canvasser has no disqualifying offense and bearing the burden of proving the fact could be constitutionally imposed directly. Plaintiffs have failed to provide authority to answer these questions in their favor. The Court finds that Plaintiffs have not set forth a claim under the unconstitutional conditions doctrine. Plaintiffs allegations are conclusory and with regard to Arkansas Code §§ 7-9-601(a)(2)(E)-(G) and §7-9-601(b)(5) do implicate the unconstitutional conditions doctrine.  The State's motion as to Count VI is GRANTED.

    5. **Count VII and VIII – disqualifying offenses (Equal Protection and Ex Post Facto Clause)**

In Counts VII and VIII, Plaintiffs allege that Ark. Code Ann. § 7-9-601(d)(3)(i) and (ii) violates the Equal Protection Clause and the prohibition of Ex Post Facto laws. Sections 7-9-601(d)(3)(i) and (ii) state:

> (d) Before obtaining a signature on an initiative or referendum petition as a paid canvasser, the prospective canvasser shall submit in person or by mail to the sponsor:
>                             \*\*\*
> (3)(A) A signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to or been found guilty of a disqualifying

>offense in any state of the United States, the District of Columbia, Puerto Rico, Guam, or any other United States protectorate.

Ark. Code Ann. § 7-9-601 (West). The statute includes a list of disqualifying offenses such as any offense that is a felony, a violation of election laws, fraud, forgery, and crimes of violence. *See* Ark. Code Ann. § 7-9-601(d)(3)(B) (West). Plaintiffs allege that these subsections of the statute violate their Equal Protection rights because they only apply to sponsors employing paid canvassers and to paid canvassers. Volunteer canvassers are not prohibited from canvassing because they have been convicted of a disqualifying offense. Sponsors do not have to sign a statement under oath affirming that a volunteer canvasser is free from a disqualifying offense. Further, Plaintiffs contend that because the statute does not limit its application to "disqualifying offenses" committed on or after April 29, 2021 (the date of enactment) it is an Ex Post Facto Clause violation. In other words, "[a]ny paid canvasser who committed a disqualifying offense at any time in the past is now, suddenly, and without notice prior to committing the 'disqualifying offense' prevented from exercising rights guaranteed under the First and Fourteenth Amendments to the United States Constitution." (Am. Comp., ECF No. 9-1 at p. 45).

The State argues that updating a statutory list of disqualifying offenses does not violate the Ex Post Facto Clause. The challenged provisions do not increase punishment for a disqualifying crime. The State likens the challenged provisions to professional-licensing regulations. In *Hawker v. People of New York*, the Supreme Court determined that the state legislature's restriction on professional licensing requirements cannot violate the Ex Post Facto Clause because the purpose of such a restriction is regulatory, and not punitive. *Hawker v. People of New York*, 170 U.S. 189 (1898). "The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual

11

comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession." *De Veau v. Braisted*, 363 U.S. 144, 160 (1960).

While the Court is skeptical that Plaintiffs can prove that Section 601(d)(3)(i) and (ii) is punitive and not regulatory, the Court cannot say at this time that Plaintiffs have failed to state a claim for an Ex Post Facto Clause violation. Further, Plaintiffs have stated a claim under the Equal Protection Clause.

### 6. Count IX – pay per signature restriction (First and Fourteenth Amendment)

Plaintiffs contend that Arkansas Code §§ 7-9-601(g)(1)-(4) and 7-9-601(c) violate their First and Fourteenth Amendment rights. Section 7-9-601(g)(1)-(4) states:

> (g)(1) It is unlawful for a person to pay or offer to pay a person, or receive payment or agree to receive payment, on a basis related to the number of signatures obtained on a statewide initiative petition or statewide referendum petition.
> (2) This subsection does not prohibit compensation for circulating petitions but only compensation for obtaining signatures when the compensation or compensation level is impacted by or related to the number of signatures obtained.
> (3) A signature obtained in violation of this subsection is void and shall not be counted.
> (4) A violation under this subsection is a Class A misdemeanor.

Ark. Code Ann. § 7-9-601 (West). Section 7-9-601(c) states:

> (b) As used in this section, "paid canvasser" means a person who is paid or with whom there is an agreement to pay money or anything of value before or after a signature on an initiative or referendum petition is solicited in exchange for soliciting a signature on a petition.

Ark. Code Ann. § 7-9-601 (West). Plaintiffs repeat that the Supreme Court has established the right to compensate petition canvassers based upon the finding that the collection of signatures is an act of core political speech. *See Meyer*, 486 U.S. at 421-22. They allege that these subsections of the Arkansas statute impose a severe burden on their core political speech because they reduce the pool of available circulators, increase the costs of a petition drive, and increase the amount of time it will take to collect the signatures. Plaintiffs claim that the subsections are not narrowly

tailored to advance a compelling governmental interest.

The State again argues that the *Jaeger* case forecloses Plaintiffs' argument because the Eighth Circuit upheld North Dakota's compensation ban on the grounds that it was a means to prevent fraud. The States argues that Arkansas has a long history of petitioning irregulates and fraud justifying compensation regulation. *See McDaniel*, 457 S.W.3d at 650 (citing the legislative findings of the Arkansas General Assembly in Act 1413 of 2013) ("[P]aid canvassers, who make their livelihood gathering signatures and who often . . . are paid by the signature, have an incentive to submit forged or otherwise invalid signatures."); *Benca v. Martin*, 500 S.W.3d 742 (Ark. 2016) (irregularities in ballot petitions); *Zook v. Martin,* 558 S.W.3d 385 (Ark. 2018) (signatures invalid).

This case can be differentiated from *Meyer* because the Colorado statute in question banned paid canvassers. While Arkansas's statute restricts how payment is made to a canvasser, it does not ban the practice. As stated above, the *Jaeger* case is also distinguishable from this case and does not foreclose Plaintiffs' arguments. While Plaintiffs ability to prove their claim appears tenuous, the Court cannot say that the claim fails as a matter of law at this time.

7. **Count X – right to anonymity (First and Fourteenth Amendment)**

Section 601(a)(1), (a)(2)(C)(i) & (ii), (a)(2)(D), and (a)(3)A) & (B) require sponsors employing paid canvassers to provide a list of their paid canvassers, including their name and current residential address, to the Secretary of State. The sponsors must keep the information updated throughout the petitioning period and provide a final list with signature cards from each paid canvasser at the time the petition is submitted to the Secretary of State. The names of the paid canvassers are available to the public upon request. Plaintiffs claim that these provisions violate their First and Fourteenth Amendment rights because paid canvassers have the right to

engage in anonymous speech and making their names available to the public subjects them to the risk of retribution and harassment from those opposing their petition.

The State argues that Plaintiffs have not stated a claim in Count X because Arkansas has an interest in protecting the integrity and reliability of the initiative process and to ensure that sponsors are aware of the identity of people they pay to solicit signatures as well as locate them should problems arise. The State contends that *Doe v. Reed*, 561 U.S. 186 (2010) controls this issue and Plaintiffs' claim must be dismissed.

In *Doe*, the Supreme Court considered whether public disclosure of the names and the contact information of signers on a referendum petition violated the First Amendment. The Court held, as a general matter, it did not. The particular statute the Court reviewed was the Washington Public Records Act ("PRA") which allows private parties to obtain copies of government documents. The Washington Secretary of State and the Court agreed that the PRA covered submitted referendum petitions. The Court found that the plaintiffs had offered "scant evidence or argument beyond the burdens they assert disclosure would impose on . . . petition signers. . .. Indeed, what little plaintiffs do offer with respect to typical petitions in Washington hurts, not helps. . .." *Doe*, 561 U.S. at 201. Plaintiffs in this case have not had the opportunity to present evidence related to Section 601 and their petition to amend the Constitution to allow term limits. The State's Motion to Dismiss is denied as to Count X.

### 8. Count XII and XIII – Arkansas Constitution

Plaintiffs claim that the residency requirement, witness-fraud provisions, background check requirement, and compensation regulation violate Article 5, Section 1 of the Arkansas Constitution because it impairs the right of persons to circulate initiative. Article 5, Section 1 states in part:

> No law shall be passed to prohibit any person or persons from giving or receiving compensation for circulating petitions, nor to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions; but laws shall be enacted prohibiting and penalizing perjury, forgery, and all other felonies or other fraudulent practices, in the securing of signatures or filing of petitions.

Ark. Const. art. V, § 1.

The State argues that all of these provisions are consistent with Article 5, Section 1 because the statutes complained of prohibit and penalize perjury, forgery, and all other felonies or fraudulent practices, in the securing of signatures or filing of petitions. Plaintiffs have conceded that they do not have standing to challenge the witness-fraud provision. As stated above, the Court finds that Plaintiffs have stated a claim that the residency requirement, background check requirement, and compensation regulation violate Article 5, Section 1 at this stage of the litigation.

## II. CONCLUSION

For these reasons, the State's Motion to Dismiss (ECF No. 14) is GRANTED in part and DENIED in part. For the reasons stated, Plaintiffs may proceed with Counts I, III, IV, V, VII, VIII, IX, X, XII, and XIII. Count II and VI are dismissed. Count XI is dismissed without prejudice to Plaintiff's right to amend the Complaint within ten (10) days of the date of this Order.[1]

IT IS SO ORDERED this 13th day of April, 2022.

James M. Moody Jr
United States District Judge

---

[1] The Court notes that Plaintiffs are not required to amend their Complaint. If they choose to do so, the Second Amended Complaint should omit the claims which have been dismissed in this Order and add only the challenge to Article 5, Section 1 as stated above. Plaintiffs should file a red-lined copy of the Second Amended Complaint as an exhibit.